**CITY OF FORT WORTH, Appellant,**

**v.**

**WESTCHESTER HOUSE, Inc., et al.,**
**Appellees.**

**No. 15557.**

Court of Civil Appeals of Texas.

Fort Worth.

Dec. 31, 1954.

Rehearing Denied Jan. 28, 1955.

R. E. Rouer, City Atty., S. G. Johndroe, Jr., Asst. City Atty., and Robert R. Goodrich, Asst. City Atty., Fort Worth, for appellant.

Walker & Day and Joe Day, Jr., Fort Worth, for appellees.

MASSEY, Chief Justice.

Westchester House, Inc., completed and began operating a 13-story apartment-hotel in 1951. Its building housed 343 separate units. Fortune Arms, Inc., completed and began operating a 12-story apartment-hotel about the same time, containing 250 separate units. These two corporations were the plaintiffs in the court below and are the appellees here. Upon completion of the buildings the City of Fort Worth, Texas, was requested to connect its sewer (as well as water) lines to each of them, which it did. The city began supplying water to each building through a meter connected to each. Sewerage service was begun at the same time. Upon receipt of the city's bills for water and sewerage service, the operators discovered that the city was charging them sewerage rates based upon a calculation that one plaintiff-appellee was the representative of 343 different customers, in the case of the first of them, and the other as though he were the representative of 250 separate customers. The operators protested to the city that they should be charged

(pursuant to city ordinance prescribing sewerage rates to be charged to users of the city sewers and sewer lines) as individual users. In order to be enabled to retain the privilege of using the sewerage of the city, the operators paid the bills rendered by the city over protest. Subsequently, they brought suit against the city, because of the alleged overcharge, to recover their overpayments for sewerage service. By their pleadings at the time the case was tried, the operators sought recovery of alleged overpayments through the month of January, 1954. They prevailed in the trial court and Westchester House, Inc., was awarded judgment against the City of Fort Worth for the amount of $3,532.38, and Fortune Arms, Inc., was awarded judgment for $2,119.75, including interest on overpayments from the date of their payment. From this judgment the City of Fort Worth appealed.

Judgment affirmed.

Actually the question posed upon the appeal is whether the trial court correctly interpreted and construed City Ordinance No. 2717 of the City of Fort Worth. The trial court held that under such ordinance each of the appellees should, for the purposes of charges to be made for sewerage services furnished by the city, be considered as a single entity rather than as a representative of a number of entities to each of whom the city supplied sewerage services. Having so held, the trial court computed what the ordinances' prescribed rates amounted to for the disputed period, subtracted that figure from the amount the city charged and collected, and rendered judgment for the difference.

Ordinance No. 2717 was passed by the Fort Worth City Council on October 5, 1949, and took effect on that date. It repealed all ordinances or parts of ordinances theretofore in effect which were in conflict with any of its provisions, and provided that in the event any of its provisions should be held invalid, all other parts should remain in full force and effect. So far as the record appears the

ordinance has never been attacked. It is not attacked in the present instance. The appellees assert the validity of the ordinance, and premise their suit upon it.

Ordinance No. 2717 is entitled, "An Ordinance Fixing the Rates to be Charged by the City of Fort Worth, Texas, to Persons, Firms and Corporations Using its Sanitary Sewerage Lines and System * * *." Section No. 1 contains definitions but does not define what character of person should be considered a "user" of the service for purposes of making a charge therefor. Section 2 prescribes that there is a necessity for, and states that it is the purpose of the ordinance to provide, a monthly charge to be made to all persons using the system and the lines of the system. The section then proceeds to set out a schedule of rates to be charged for sewerage services. The rates specified are based upon the volume of water consumed or used by those same persons to whom the city furnishes the sewerage facilities, without regard to whether the city furnishes all or any part of the water consumed or used. The water use and consumption is contemplated to be measurable and measured by a meter in any event. As so measured, the sewerage charge is prescribed to be based upon water consumed or used by units of 100 cubic feet during a single month. The one is merely adopted as the yardstick of measure for the other. A minimum charge is prescribed whether any water be used or not, or if less than 266⅔rds cubic feet of water used. After such 266⅔rds cubic feet of water is used there is a rate for computation of a proper sewerage charge until such time as 1,266⅔rds cubic feet of water is used during a single month, and with a progressively reduced rate for cumulative cubic feet of water similarly used during each 1,000 cubic feet of water used until 50,266⅔rds cubic feet of water is consumed during any one month, after which a flat rate of charge is provided regardless of how much more water than this number of cubic feet might be used. The section specifically provides that the

charges to be made by the city for sewerage service shall be based upon the rates so provided by the ordinance.

Other provisions of the ordinance are immaterial to a decision in this case. Nowhere in the ordinance is there a clarification of the question as to just what character of person should be considered a "user" of the sewerage services for the purpose of computing monthly bills to be charged in consideration of the use.

 The city contends that another city ordinance passed at the same time is *in pari materia* with the ordinance under consideration. The ordinance is No. 2716. Its title is "An Ordinance Prescribing Rates Charged Consumers of Water Supplied by the Fort Worth City Water Works. * * *" We have examined the ordinance but fail to see where it relates to the same subject. In so far as our question is concerned, it therefore is not *in pari materia* as it does no more than calculate rates by a different calculation but from the same yardstick or measure used in calculating rates under the sewer ordinance. But it calculates water rates only as to water furnished by the city to its water customers. Even if the water ordinance could be considered *in pari materia* it would be no aid in the solution of the question as to who should be considered a "user" of city sewerage service for purposes of calculating rates, arriving at proper charges to be made therefor.

There is one interesting section of Ordinance No. 2716, the water ordinance, reading as follows: "In all cases where more than one living or business unit is supplied through one meter, a minimum charge will be made for each living unit or business unit supplied through such meter." It appears that as the result of the section, the Water Department of the city was authorized and directed to charge the appellees before us at least the minimum charge prescribed in the water ordinance multiplied by the number of units in the apartment house of each, even though there might be some hypotheticated month-

ly instance when only one or two units of the apartment house was occupied by families having occasion to use water. This was true because both appellees used city water. Of course, such a hypotheticated circumstance would be unlikely to occur, and one might expect that most, if not all, of the units would ordinarily be occupied and the water in the process of consumption. And were they all occupied, and the occupants using water, it would of course be discriminatory for the city to charge the apartment house owner as an individual upon the rate prescribed by the ordinance for water consumption and use in the same manner as it charged an individual home owner in a neighboring part of the city, for the home owner would thereby be paying a proportionately higher rate, since he would not be expected to use nearly so much water as the aggregate of all the families who were tenants in an apartment house. Such conclusion logically follows because the rates prescribed in the water ordinance, for the consumption and use of water, became progressively lower with increase of such consumption and use in a manner similar to the progression outlined in the case of the sewer ordinance. Though such manner of charge would have been discriminatory, the discrimination would not have amounted to arbitrary and unreasonable discrimination, the apartment house dweller not necessarily coming within the same class of users that the home owner comes within. Caldwell v. City of Abilene, Tex.Civ.App. Eastland, 1953, 260 S.W.2d 712, error refused.

Since in the case of the sewer ordinance the city council did not include a provision similar to the one it saw fit to include in the water ordinance, it is apparent that such ordinance enacting authority either considered that the provision in the water ordinance was sufficiently operative to effect a just equalization between apartment house dwellers and home owners, desired to exclude a similar provision in the sewer ordinance for some other reason, —or contrarily, that it unintentionally

overlooked and inadvertently failed to incorporate a similar provision in the sewer ordinance. The amounts received by the city for sewerage services to users of its sewerage system and lines are collected and handled by the Fort Worth City Water Department along with the amounts the city collects for its water. Irrespective of the reason why the city council failed to or refrained from incorporating a similar provision in the sewer ordinance, it would make no difference in our decision. The net result of what occurred was that the city created a new classification applicable to the individual appellees in so far as water consumption and use is concerned, but did not do so as applied to sewer use.

■ Except as to our determination as to what character of person should be considered a "user" of the city's sewerage system and lines for purposes of paying a monthly sewerage charge, the ordinance could not be said to be doubtful, uncertain or of ambiguous purport. Therefore, except as to such question, we would not be authorized to indulge in conjecture as to the intention or policy of the city's ordinance enacting authorities, or to look to the consequences of a particular construction except in that determination. Gilmore v. Waples, 1916, 108 Tex. 167, 188 S.W. 1037; Trimmier v. Carlton, Tex.Civ.App. Austin, 1924, 264 S.W. 253, affirmed 116 Tex. 572, 296 S.W. 1070; Weaver v. Robison, Tex.Com.App., 1924, 114 Tex. 272, 268 S.W. 133; Vaughan v. Southwestern Surety Ins. Co., 1918, 109 Tex. 298, 206 S.W. 920; 39 Tex.Jur., "Statutes," p. 162, sec. 89, "Avoidance of Judicial Legislation."

■ In determining judicially the character of person to be considered as a "user" of the city's sewerage system and lines for the purpose of settling the obligation of payment, we look to the ordinance and readily ascertain therefrom that the obligation is incumbent upon a person,

firm or corporation and that the measure of the obligation is measurable by a water meter. The intent of the ·ordinance as fairly expressed appears to impose the obligation of payment upon an individual whose water use and consumption is measured by such a meter, not upon the members of his family or upon his guests or tenants. It is the legislative intent which must be given effect. 39 Tex.Jur., p. 166, sec. 90. There being no doubt as to the entity of the person obliged to pay for the service, therefore it furthermore appears that the fairly expressed measure of the obligation so imposed upon such person is the rate prescribed by the ordinance. If this were not true, we must of necessity supply an omission, though none necessarily appears. But it is not our business to supply omissions in a law. Gilmore v. Waples, supra.

■ Had the city desired to consider each individual family unit, tenant in appellees' premises, as a "user", it could have installed meters to measure each family's water use and consumption. City of Galveston v. Kenner, 1922, 111 Tex. 484, 240 S.W. 894; Caldwell v. City of Abilene, supra. So, in the present instance it was the individual appellees who were furnished the service and it was the individual appellees who were responsible for the payment of the prescribed rates. It was the individual appellees, not their tenants, who were subject to the penalties prescribed by the ordinance in instances of nonpayment. Therefore, the individual appellees would be properly considered as individual entities subject to the rates specified in the ordinance, and as such, an individual "user" of the service. Neither of the appellees should be compelled to pay more than the rate provided for individual "users", and where they of necessity were compelled to do so over protest, they are entitled to recover such amounts as may have been paid over the amounts justly collected.

Judgment affirmed.