BEXAR COUNTY, Texas, Appellant,

v.

CITY OF SAN ANTONIO, Appellee.

No. 13830.

Court of Civil Appeals of Texas.

San Antonio.

Nov. 15, 1961.

Rehearing Denied Jan. 10, 1962.

Charles J. Lieck, Jr., Dist. Atty., L. J. Gittinger, J. W. Sewell, Asst. Dist. Attys., San Antonio, for appellant.

Carlos C. Cadena, City Atty., Crawford Reeder, Asst. City Atty., San Antonio, for appellee.

MURRAY, Chief Justice.

This suit was instituted by the City of San Antonio, a municipal corporation, organized and existing under the laws of the State of Texas as a home rule city, against Bexar County, a political subdivision of the State of Texas, to recover the sum of $285.-92, for sewer charges rendered against certain properties belonging to the County which are used exclusively for public purposes and are connected with the City's sewerage system. The account covered a period from March 17, 1960 to July 31, 1960. The charges were based upon rates fixed by an ordinance of the City dated March 17, 1960, and numbered 28,351, as amended by another ordinance of the City dated July 14, 1960, and numbered 28,732. The County refused to pay this bill, contending, among other things, that the ordinances upon which such sewer charges were based were unreasonable, arbitrary, confiscatory, void and illegal, and that the charges were in fact a tax levied by the City upon the County. The case was submitted largely upon stipulated facts, and the hearing resulted in judgment for the City against the County for the amount sued for. The County has prosecuted this appeal.

Appellant's first contention is that the City levied these charges against county property used exclusively for public purposes, and that such sewer charges were in fact taxes or assessments not authorized to be levied by a municipal corporation against a county, and that such sewer charges were illegal and void.

Unquestionably, a city cannot levy taxes or assessments against property of a county used exclusively for public purposes in this State, unless authorized to do so by a legislative act, and, under the stipulated facts in this case, if the charges sued for were in fact taxes or assessments against the properties they were illegal and void. Harris County v. Boyd, 70 Tex. 237, 7 S.W. 713; Art. 11, § 9, Texas Constitution, Vernon's Ann.St. Thus the real question here

presented is whether or not, under all the facts in this case, the so-called sewer charge was in fact a tax and assessment against Bexar County. It has been decided that a city may make a reasonable charge for the benefits received by those who use its sewers, sufficient to operate and maintain such sewer system and to provide for replacements and future extensions thereof. City of Texarkana v. Wiggins, 151 Tex. 100, 246 S.W.2d 622; City of Fort Worth v. Westchester House, Tex.Civ.App., 274 S.W.2d 732; City of Wichita Falls v. Landers, Tex.Civ.App., 291 S.W. 696; Mulkey v. City of Kaufman, Tex.Civ.App., 286 S.W. 620; Cooley on Taxation, 6 36.

■ Appellant contends that inasmuch as the sewer charge fixed by the above ordinances would produce the sum of $1,600,-000.00 per year, while the cost of maintaining and operating the sewerage system of the City is the sum of $490,000.00 per annum, that the charge was not a reasonable charge for the service rendered but a tax levied for the purpose of raising revenue, and therefore not applicable to Bexar County. It is stipulated, among other things, that the City has expert advice to the effect that it will be necessary to spend, during a period from 1960 to 1970, the sum of $16,301,650.00 for capital improvements in the sewerage collection and treatment system to meet the City's sewerage requirements for such period. A city is entitled to fix its sewerage rate so as to create not only the cost of operating and maintaining its present sewerage system, but also the cost of making replacements and extending and improving such system. Louisville & Jefferson County Metropolitan Sewer Dist. v. Barker, 307 Ky. 655, 212 S.W.2d 122, 4 A.L.R.2d 588; City of Texarkana v. Wiggins, supra; City of Fort Worth v. Westchester House, supra; Mulkey v. City Kaufman, supra.

We therefore conclude that the fact that the sewer charge would produce a greater sum than the cost of operating and maintaining the City's sewerage system, does not render such a charge a tax or assessment. Being only a reasonable charge for the service rendered, it was a proper charge by the City against the County.

■ There is a presumption in favor of the validity of a municipal ordinance and the burden of showing that it is invalid is upon the party attacking it, and unless such showing is clearly made the action of the city council in enacting the ordinance is conclusive and cannot be reviewed by the Court. City of Abilene v. Woodlock, Tex. Civ.App., 282 S.W.2d 736, error refused, certiorari denied, 351 U.S. 925, 76 S.Ct. 782, 100 L.Ed. 1455.

■ The County contends that the above two ordinances were not enacted for the purpose of making a reasonable charge, but for the purpose of raising revenue. The County in making this contention does not take into consideration the value, at the present time, of the City's sewerage collecting and treating system, its depreciation each year, the cost of replacing parts that can no longer be used, and the cost of making extensions to meet the rapidly growing population of the City. The burden was upon the County to show these things if it expected to establish the fact that the City's sewer charges were for revenue purposes, and not a charge for service rendered, but in fact a tax. These items must be taken into consideration in determining whether a sewer charge is excessive.

In Mulkey v. City of Kaufman, 286 S.W. 620, the Court said:

"The amount charged for the use of sewer is not inherently, in a legal sense, a tax, not even levied and collected as such, but a charge made without discrimination for a service rendered in value equal to the respective sums charged. Such charges are not collected by the tax collector or assessor, but collected through the water and sewer department, and the sum thus collected does not constitute any portion of the

ad valorem tax levied and collected by appellee. Appellee city, existing under the general laws of Texas as a municipal corporation, is authorized to operate a waterworks and sewerage system, and, under authority conferred by law, has the power to assess such charges for its water and the use of its sewer system as within the judgment of its governing body should be necessary to support and maintain and properly care for the city's property and to make such extension thereof as in their best judgment should be necessary. All of this is for the sole purpose of furnishing the inhabitants of the city with an adequate and wholesome supply of water and a sanitary sewerage system so necessary for the preservation of health."

It is provided by ordinance of the City that all revenues from sewer service rendered outside or inside the City limits be placed in the "City of San Antonio Sewer Reserve Fund," a fund created by Ordinance No. 20747. Said ordinance also provided, in Section 18 thereof, as follows:

"Any revenues in excess of those required to establish and maintain the funds as above required may be used for the redemption of the bonds or for any lawful purpose."

■ The fact that under the above provisions some of the funds collected as sewer charges may ultimately be used for any lawful purpose does not render such service charges a "tax".

The exact question as to whether a City is authorized to collect a sewer charge from a County has not been directly passed upon by any Court in this State, but the question was passed upon in the State of Kentucky, in Louisville & Jefferson County Metropolitan Sewer District v. Barker, 307 Ky. 655, 212 S.W.2d 122, 4 A.L.R.2d 588, wherein it was held that such a charge could be made against a county.

"Sewer Charges" have been held not to be a "tax" by the Courts of this State.

City of Wichita Falls v. Landers, Tex.Civ. App., 291 S.W. 696, error ref.; Mulkey v. City of Kaufman, Tex.Civ.App., 286 S.W. 620. The same thing is implied in the cases of City of Texarkana v. Wiggins, 151 Tex. 100, 246 S.W.2d 622, and City of Fort Worth v. Westchester House, Tex.Civ.App., 274 S.W.2d 732.

The County next contends that Ordinances Nos. 28,351 and 28,721, attached as exhibits to the City's pleadings, were not admissible in evidence. We overrule this contention. Municipal ordinances being presumed to be valid, the burden was upon the County to show the invalidity of these ordinances, and having failed to discharge this burden, the ordinances were admissible in evidence.

County further contends that said Ordinances Nos. 28,358 and 28,721, and 20,747, were not admissible in evidence because they impose a penalty, fine or forfeiture, and were not published as is required by Section 17 of the Charter and Code of the City. This section requires that every ordinance imposing any penalty, fine or forfeiture for a violation of its provisions shall, after passage thereof be published, etc.

Article 1013, Sec. 1, Vernon's Ann.Civ. Stats., provides for the publication of penal ordinances. If Ordinances Nos. 28,358, 28,721 and 20,747, are to be classified as penal ordinances, then they are ineffective because not published. The County summarizes the questions here presented as follows:

"1. Does the power given to the City of San Antonio in Ordinance No. 28,358 to disconnect the sewer connection of any premises to which such sewer charges are applicable and the right to discontinue the furnishing of water to such premises, together with the fee of $5.00 to cover the cost of disconnection (payable to the City) and the fee of $2.00 for resuming the furnishing of water (payable to the City Water Board) constitute a penalty, fine or

forfeiture within the contemplation of Art. 1013 R.C.S. of Texas, and the Charter and Code of the City of San Antonio, which requires publication of such ordinances, and is such ordinance therefore a penal ordinance?

"2. Does the power given to the City of San Antonio in the same ordinance to refuse to give either water service or sewer service to the person who leaves premises where sewer charges are applicable and owes sewer charges, at a new location, regardless as to whether or not such new location is actually connected with the sewer system of the City of San Antonio, constitute a penalty, fine or forfeiture within the contemplation of Art. 1013 R.C.S. of Texas and the Charter and Code of the City of San Antonio, requiring publication of ordinances containing a penalty, fine or forfeiture, and such ordinance therefore a penal ordinance?

"3. Does the failure to pay sewer charges, or the failure to pay any fees for disconnection of service or failure to pay a fee for resumption of water service render such person amenable to the provisions of Sec. 1–5, the General Penalty Ordinance, which says that when the doing of an act is required by ordinance, where no specific penalty is otherwise provided, the violator of any such provision of the code or ordinance shall be punished by a fine not to exceed $200.00 and each days violation of the Code or ordinance shall constitute a separate offense?

"4. Since the ordinances on their face contain no separable clauses, are they separable in fact to the extent that the rates fixed for sewer services as set out by the ordinance of March 17, 1960, as reduced by the later ordinance of July 14, 1960, are collectible, although it should be held that the provisions with regard to the fee for disconnection of the sewer service, the collections of fees for resumption of water service and the failure to provide service in a new location where sewer charges are due and unpaid at a residence previously occupied by the applicant for service, constitute a penalty, fine or forfeiture, and if not separable in fact are such ordinances void and unenforceable?"

■ The fact that the City is authorized to disconnect the water or sewerage connection of a delinquent user, does not make these ordinances penal in their nature. Such provisions are nothing more than regulations whereby the City can prevent a person from using its sewers without paying the sewer charge. The five-dollar fee for re-connecting the sewer or the two-dollar fee for re-connecting the water is simply a fee to cover the cost of such operations. The fact that a delinquent user cannot move to a new address and there secure a water and sewer connection without paying up past due charges and connecting fees is intended simply to prevent one from avoiding sewer charges by the device of changing from one address to another. City of Wichita Falls v. Landers, supra; Patterson v. City of Chattanooga, 192 Tenn. 267, 241 S.W.2d 291; West Texas Construction Company v. Doss, 128 Tex. 339, 96 S.W.2d 1116; City of Lampasas v. Huling, Tex.Civ.App., 209 S.W. 213.

■ The fact that the rate imposed by Ordinance No. 28,720 is based upon the amount of metered water used upon given premises rather than upon the amount of sewerage carried away therefrom, does not render such rate arbitrary, confiscatory or void. There is a close relation between the amount of water used and the amount of sewerage carried away. There can be no doubt that a greater percentage of metered water goes into the sewer in winter than in summer, due largely to the watering of lawns during the summer months. To meet this situation the ordinance provides a graduated scale rate, depending upon the amount of water used. This, to some ex-

tent, takes care of the variance between winter and summer, as to the percentage of water going into sewers. It would certainly be very expensive, if not an impossible undertaking, to measure the amount of sewerage discharged by each user. A sewer charge based upon the amount of water used certainly is not mathematically exact as to the actual amount of water used on given premises which goes into the sewer, but the fact that it is not mathematically correct does not render such a rate unreasonable, arbitrary, or otherwise illegal.

In Rhyne, Municipal Law, Sec. 20–5, we find the following:

"The overwhelming weight of authority holds that sewer service charges based on the amount of water used on the premises is a reasonable and valid regulation."

In Antieau, Municipal Corporation Law, Sec. 19.03, it is stated:

"Many cases have permitted municipalities to measure sewer charges by the water delivered to the premises through water meters. Says the Oklahoma Court: 'In the absence of actually measuring the flow of sewage, this seems to be the most equitable manner of determining the extent of use of the sewer system by the different users,'" citing Sharp v. Hall, 198 Okl. 678, 181 P.2d 972.

The Supreme Court of Pennsylvania had this to say in In Re City of Philadelphia, 343 Pa. 47, 21 A.2d 876:

"* * * the amount of water which flows into a building is apt to be roughly proportional to what flows out as sewage. While there are exceptions without doubt, and while it might be more equitable to consider some further factors having to do with types of use, yet we cannot say that a measure of sewer use based upon water use is inequitable."

Under all the facts shown herein, the graduated sewer charge based upon water used, was not unenforceable, arbitrary, confiscatory and void.

The judgment of the trial court is affirmed.