722 P.2d 967

**KYRENE SCHOOL DISTRICT NO. 28 OF MARICOPA COUNTY, Plaintiff-Appellee.**

v.

**CITY OF CHANDLER, an Arizona municipal corporation, Defendant-Appellant.**

**No. 1 CA–CIV 7615.**

Court of Appeals of Arizona, Division 1, Department B.

April 3, 1986.

Clifford J. Frey, Chandler, for defendant-appellant.

Wentworth & Lundin by Charles W. Herf, David McCord, Phoenix, for plaintiff-appellee.

The League of Arizona Cities and Towns by J. LeMar Shelley, Gen. Counsel, Phoenix, amicus curiae.

OPINION

FROEB, Chief Judge.

On June 21, 1983, Kyrene School District No. 28 (Kyrene), a political subdivision of the State of Arizona pursuant to A.R.S.

§ 15–101(15), filed a complaint against the City of Chandler (Chandler), also a political subdivision of the State of Arizona, to recover $12,600 paid under protest to Chandler as a "water system development fee" and $6,750 paid as a "wastewater system development fee."

Kyrene claimed that these charges were taxes from which Kyrene was exempt under the doctrine of intergovernmental tax immunity. *See City of Tempe v. Arizona Board of Regents*, 11 Ariz.App. 24, 461 P.2d 503 (1970). Chandler responded that the charges were not taxes but were fees imposed on Kyrene as a new user of its municipal water and sewer systems. Kyrene does not challenge the reasonableness of these charges. The appeal is directed to the distinction between a tax and a fee.

The trial court granted partial summary judgment to Kyrene on counts one and three of its complaint, holding that Chandler's water and wastewater system development charges were taxes and were wrongfully imposed on Kyrene based on the doctrine of intergovernmental immunity. Count two of Kyrene's complaint was dismissed pursuant to stipulation of the parties, and count four was dismissed as moot in light of the court's resolution of counts one and three.

It is from this judgment that Chandler appeals. The League of Arizona Cities and Towns appears as *amicus curiae*.

The facts of this case are undisputed. In 1981–1982, a new elementary school, Kyrene del Cielo, was built by Kyrene within the city limits of Chandler. Kyrene paid for the water and sewer mains adjoining the elementary school's property. Other expenses arising from placement of the mains were borne by the developer, U.S. Homes. Kyrene paid Chandler $1,800.00 for the installation of three, two-inch water meters at Kyrene del Cielo. Kyrene also pays to Chandler monthly water and sewer fees based upon water meter readings. The contested charges are not water and wastewater connection charges.

The charges are based upon Chandler City Code §§ 26–26.1 and 26–29.1.

Chandler City Code § 26–26 reads in part:

**Policy established.**

(a) There is hereby established as hereinafter set forth a policy and orderly program to provide domestic water service and sanitary sewer service for all areas and subdivisions within the city limits and those areas and subdivisions outside the city limits for which domestic water service and/or sanitary sewer service is desired.

Chandler City Code § 26–26.1 reads, in part:

**Waste water system development charge.**

In accordance with the policy for providing sanitary sewer service, beginning in July 1982 and on an annual basis each July thereafter, the director of public works shall establish waste water system development charges based on the council approved five-year waste water capital improvement program and council adopted water and waste water system master plan.

The waste water system development fee shall be paid at the time the building permit or the application for water/sewer tap is issued, whichever occurs first. When a building permit is issued but no water/sewer tap application is made, the system development charge shall be based on maximum instantaneous flow required to serve the new building by a meter, the size of which shall be determined by the city engineer.

(a) A fee for the balance of calendar year 1980 and for calendar year 1981 is hereby established:

Single-family residence, per unit ... $450.00
Multifamily residence, per unit .... 420.00

Industrial and commercial units shall be charged based on waste water flow capability as determined by water meter size as follows:

(charge schedule omitted)

A commercial or industrial user may install a waste water flow meter ap-

proved by the director of public works when a consumptive use of water exists. Separate meters may also be requested on other water services which do not contribute to the waste water system. System development fees will be based on the maximum [instantaneous] capacity of waste water flow meter.

(b) All monies received from the waste water system development fees shall be deposited in the waste water development reserve fund to be used only for capital expansion and enlargement of the city waste water system and/or for retirement of debt service, both principal and interest, related to water and sewer system development. (Ord. No. 909, § 1, 12–22–80; Ord. No. 998, § 1, 8–27–81; Ord. No. 1036, § 1, 1–11–82)

Chandler City Code § 26–29.1 reads, in part:

### Water system development charge.

In accordance with the policy for providing domestic water service, beginning in July 1982 and on an annual basis each July thereafter, the director of public works shall establish water system development fees based on the council approved five-year capital improvement program and council adopted water and waste water system master plan.

The water system development charge shall be paid at the time the building permit or the application for water/sewer tap is issued, whichever occurs first.

When a building permit is issued but no water/sewer tap application is made, the system development charge shall be based on maximum instantaneous flow required to serve the new building by a meter the size of which shall be determined by the city engineer.

(a) A fee for the balance of calendar year 1980 and for calendar year 1981 is hereby established:

Single-family residence (⅝″ × ¾″).. $560.00

Multiple family, commercial, industrial and other type units shall be charged based on the size of water meters or combinations of water meters as follows:

(charge schedule omitted)

(b) All monies received from the water system development fees shall be deposited in the water development reserve fund to be used only for capital expansion and enlargement of the city water system and/or for the retirement of debt service, both principal and interest, related to water and sewer system development. (Ord. No. 908, § 1, 12–22–80; Ord. No. 999, § 1, 8–27–81; Ord. No. 1036, § 2, 2–11–82)

Kyrene argues that the system development charges are taxes because it receives no requested specific benefit in return for them. Kyrene asserts that these charges are not related to the construction costs of the water and sewer lines, nor are they a part of the monthly service charge paid by Kyrene. It contends that the system development charges are for the purpose of raising revenue and are based on an "ability to pay" theory. That is, a greater charge for a larger water meter is based on the supposed "deep pocket" of the larger water services user rather than on actual service provided. Kyrene also argues that the system development charges are taxes because they are put to the general governmental purpose of providing citywide water and sewer service. Kyrene relies on *Stewart v. Verde River Irrigation and Power District,* 49 Ariz. 531, 68 P.2d 329 (1937) as well as numerous out-of-state cases to support its proposition.

We reject Kyrene's argument and hold that when the distinction between tax and fee in *Stewart* is applied in this case, the result is a fee not a tax. We therefore do not reach the issue of intergovernmental tax immunity in this case.

In *Stewart,* plaintiff, Verde River Irrigation and Power District, brought suit against the State Water Commissioner for its imposition of a charge. Plaintiff filed an application for a permit to appropriate certain water from the Verde River for the

irrigation of its land and the development of electrical energy. Plaintiff paid a required $3.00 fee along with its application. The Water Commissioner thereafter charged plaintiff $10,970.40 in order to obtain final approval. Plaintiff paid the charge under protest and sued for return of the sum on several grounds. One of the issues was whether the sum was a fee or a tax. The Arizona Supreme Court, concluding it was a fee, discussed the difference between a "fee" and a "tax":

> The word 'fee' is defined to be, 'a charge fixed by law for the service of a public officer,' while a 'tax' is 'a forced contribution of wealth to meet the public needs of the government.' Webster's New International Dictionary. The distinction between the two is very plain. A tax is imposed upon the party paying it by mandate of the public authorities, without his being consulted in regard to its necessity, or having any option as to its payment. The amount is not determined by any reference to the service which he receives from the government, but by his ability to pay, based on property or income. On the other hand, a fee is always voluntary, in the sense that the party who pays it originally has, of his own volition, asked a public officer to perform certain services for him, which presumably bestow upon him a benefit not shared by any other members of society. We think it is clear that the payment which plaintiff is seeking to recover is in no sense a tax, but is rather a fee. In the first place, the necessity of its payment does not arise unless and until the individual request the public authority to perform some particular service. So long as the service is not asked, the money will never be demanded. In the second place, the service requested of the defendant is one which obviously and admittedly will confer a particular benefit on plaintiff alone, and upon no other person, natural or artificial.

49 Ariz. at 544–545, 68 P.2d at 334–335.

Although we are not referred to any other Arizona cases defining a fee in relationship to a tax, there are other Arizona cases which define the term tax. In *Arizona Department of Revenue v. Transamerica Title Insurance Company*, 124 Ariz. 417, 420, 604 P.2d 1128, 1131 (1979), the Arizona Supreme Court held that a tax is "the enforced contribution of persons and property levied by the authority of the state." *See also Hunt v. Callaghan*, 32 Ariz. 235, 257 P. 648 (1927). In *Weller v. City of Phoenix*, 39 Ariz. 148, 151, 4 P.2d 665, 667 (1931), the court held that in distinguishing between taxes and assessments, "[t]axes are generally held to be burdens or impositions laid for purposes of general revenue, regardless of the direct benefit accruing to the person or property taxed...."

We hold that in light of the analysis of tax versus fee in *Stewart*, the system development charges in this case are fees. Although the facts of this case do not precisely fit into the discussion found in *Stewart*, we do not interpret *Stewart* as setting forth an inflexible guide by which a tax and a fee are to be measured. Since broad general concepts are involved, it would be virtually impossible to set forth a rigid definition of a tax and a fee. Under the facts of this case, Kyrene is receiving the overall benefit of Chandler's water and wastewater systems in exchange for the system development charges. The amount charged Kyrene is in reference to the cost of the systems providing the service. We disagree with Kyrene that the charges are based on an ability to pay theory.

Chandler responds to Kyrene's argument with an example of a self-service car wash and a medical office. Since payment of the system development charge is based on the size of the water meter, the larger the water meter the greater the system development charge. Chandler points out that a self-service car wash would require a larger meter than a medical office, yet the car wash would be unlikely to generate the income of a medical office. Therefore, it does not follow that the development fee based on the size of the water meter is related to the "deeper pocket" of the owner of the larger meter. We agree. Basing

the system development charges on the size of the meter indicates only that a water/wastewater user will pay a correspondingly greater charge as the volume of water usage increases.

We also reject Kyrene's remaining argument that the development charges are taxes because, once paid, they are put to the "general governmental purpose" of providing citywide water and sewer service. As appears in Chandler City Code §§ 26–26.-1(b) and 26–29.1(b) earlier set forth, the development fees are used to retire wastewater and water debt and to expand the wastewater and water systems. In a sense, the fees represent part of the capital cost of the wastewater and water systems spread among its users. This aspect was found persuasive by a Texas court in a similar case. *Bexar County v. City of San Antonio,* 352 S.W.2d 905 (1962).

In the *Bexar County* case, the City of San Antonio charged Bexar County a sewer charge for the use of the sewer system. The City of San Antonio argued that the charges were taxes from which it was immune. The court held that the charges were not taxes and that the city could make a reasonable charge for the use of its sewers, "sufficient to operate and maintain such sewer system and to provide for replacements and future extensions thereof." 352 S.W.2d at 907. We have earlier held that the system development charges were in exchange for the overall benefit of receiving water and wastewater services from Chandler. We hold that directing part of that payment toward the expansion and replacement of these systems makes the charge no more a tax in this case than was the sewer charge in *Bexar.* *See also Contractors & Builders Ass'n v. City of Dunedin,* 329 So.2d 314 (1976), *cert. denied,* 444 U.S. 867, 100 S.Ct. 140, 62 L.Ed.2d 91 (1979).

The judgment holding that the development charge is a tax is reversed. In view of this, count four of Kyrene's complaint is no longer moot. The case is remanded to the trial court for further proceedings consistent with this opinion.

CONTRERAS, P.J., and MEYERSON, J., concur.