OFFICE OF THE ATTORNEY GENERAL · STATE OF TEXAS



October 17, 2000

The Honorable Susan D. Reed
Criminal District Attorney, Bexar County
300 Dolorosa, Fifth Floor
San Antonio, Texas 78205-3030

Opinion No. JC-0294

Re: Whether a city council may pay attorney's fees incurred to defend certain of its members in prosecution for Open Meetings Act violations, and related questions (RQ-0228-JC)

Dear Ms. Reed:

You ask about the validity of resolutions adopted by a city council authorizing payment from city funds of city council members' attorney's fees, where city council members indicted for alleged Open Meetings Act violations voted for the resolutions. A city council member is disqualified from voting on a resolution to pay his or her legal fees, or the legal fees of another city council member indicted on the same facts for the same offense. The resolutions were invalid. Even if they were valid, we believe that a governmental body may not decide to pay the legal expenses incurred by a public officer or employee in defending against a criminal prosecution until it knows the outcome of the prosecution. A governmental body may not reimburse an individual whose guilt is established. If the city council were able to take valid action to pay the attorney's fees of a city council member, the fees could be paid from the revenues of the city's water system operated under chapter 402 of the Local Government Code.

The criminal charges were brought against the city council members because a former city council member was allegedly denied access to the public portion of a city council meeting on November 23, 1999, which was called to discuss Elmendorf Police Department personnel in executive session.[1] The mayor, four city council members, and the chief of police of the City of Elmendorf have been indicted for alleged violations of the Open Meetings Act at the November 23 meeting.[2] The Elmendorf City Council met on April 16, 2000, to vote on a resolution authorizing the engagement and payment of counsel to represent the city council members in the prosecution. *See* Request Letter, note 2, at 2. Five city council members voted on the resolution. One of the council members had been appointed to replace a council member who resigned after his indictment on Open Meetings Act violations and another had received immunity from prosecution. *See id.*

---

[1] *See* Brief from Michael S. Brenan, Elmendorf City Attorney, to Elizabeth Robinson, Chair, Opinion Committee at 1 (June 2, 2000) (on file with Opinion Committee) [hereinafter Brenan Brief].

[2] *See* Letter from Honorable Susan D. Reed, Criminal District Attorney, Bexar County, to Honorable John Cornyn, Texas Attorney General at 1-2 (May 2, 2000) (on file with Opinion Committee) [hereinafter Request Letter].

These two city council members voted against the resolution, while the three city council members who were under indictment voted in favor of it. *See id.*

Because the April 16th resolution had been approved by the three city council members who would benefit from it, it was reconsidered at another city council meeting held on April 20, 2000. At this meeting, the council approved three separate resolutions, each of which authorized payment of the legal fees for one of the three indicted city council members. Each indicted city council member abstained from voting on the resolution that applied to him or her and the other two indicted city council members voted in favor of it. *See id.*

You ask the following questions about the city council's action:

> 1. Can a member of a city council that was indicted for Texas Open Meetings Act violations vote on resolutions to employ and pay legal counsel to represent other members of the city council that were indicted for the same violations and to which the voting member is alleged to be a party?

> 2. May the governing body of a municipality authorize payment of attorney's fees incurred in defending the mayor and certain city council members following their indictments for Open Meetings Act violations occurring during a meeting of the city council?

> 3. Can revenues from a municipal water utility system be utilized to pay legal counsel for representation of the mayor and certain city council members on Open Meetings Act violations if the resolution authorizing payment specified that the monies were to be derived from the city budget (i.e. general fund)?

*Id.* at 2, 4.

We consider the events of the meetings at which the city council members who had been indicted for violating the Open Meetings Act voted to pay attorney's fees to defend against these charges. At the April 16 meeting, the resolution authorizing payment of the legal fees was adopted by the vote of three city council members who had been indicted. At the April 20 meeting, each indicted city council member abstained from voting on the resolution that applied to him or her, but voted on the resolution applicable to the other indicted city council members. *See id.* at 2.

In our opinion, the resolutions adopted at both meetings are invalid. This office has stated in numerous opinions that a political subdivision may pay an officer's or employee's legal expenses only if it makes the following determinations: payment of the legal fees serves a public interest and not merely the defendant's private interest, and the officer or employee committed the alleged action or omission forming the basis of the suit while acting in good faith within the scope of his or her

official duties. *See* Tex. Att'y Gen. Op. Nos. DM-488 (1998) at 2-3, JM-968 (1988) at 2-3, H-887 (1976) at 3; Tex. Att'y Gen. LA-24 (1973) at 2-3. It is extremely doubtful that an indicted council member could address these questions disinterestedly when payment for his or her defense is at stake. Public policy in Texas bars a public official from casting a deciding vote in a matter concerning an issue in which he has a direct, personal interest. *See Hager v. State ex rel. TeVault*, 446 S.W.2d 43, 49 (Tex. Civ. App.–Beaumont 1969, writ ref'd n.r.e.); Tex. Att'y Gen. Op. No. JM-824 (1987) at 8. *See also Bradley v. State*, 990 S.W.2d 245 (Tex. 1999). An indicted city council member is disqualified from voting on payment of attorney's fees for his or her defense.

We moreover believe that the indicted city council members were disqualified from approving the payment of attorney's fees for the other council members indicted for the same offense. We base our conclusion on *State ex rel. La Crosse v. Averill*, 110 S.W.2d 1173 (Tex. Civ. App.–San Antonio 1937, writ ref'd), involving a quo warranto action to remove two city commissioners who were under indictment. The city commissioners argued that the removal procedure provided in the city charter must be exhausted before quo warranto could be brought. *See Averill*, 110 S.W.2d at 1175. The court noted that the city council consisted of the two city commissioners and the mayor, and under the city charter, these officials could be removed only by their own votes, after they had conducted their own trial. *See id.* The court stated as follows:

> [T]he majority of the members of the commission are charged with the joint commission of a single offense . . . . If under the charter provisions they be tried jointly, as they may be, they must pass directly upon their own joint guilt or innocence; if separately, then the mayor and one of the commissioners must pass upon the guilt or innocence of the other member for an offense in which it is alleged a majority jointly and equally participated, and for which it is alleged they each are equally and by the same facts guilty. The result is obvious: First, that from every consideration they will not prosecute or convict themselves or their coconspirator; and, second, their decisions in the matter would be void, since the Constitution, to say nothing of public policy, prohibits any judge from sitting "in any cases wherein he may be interested," . . . .

*Id.* at 1175-76 (citation omitted).

The three city council members of the City of Elmendorf were indicted for the same alleged violation of the Open Meetings Act arising out of the same events and they have similar, if not identical, personal interests in receiving an adequate defense against the charge. It would also be extremely difficult for any of the indicted council members to make a disinterested determination as to the other council members indicted for the same offense. On the basis of *Averill*, we believe a court would hold that the three indicted city council members are disqualified from voting on a resolution authorizing the payment from public funds of legal fees for him or herself or for any of the other two indicted council members. Accordingly, we conclude that the resolutions adopted on

April 16 and April 20 approving the payment of attorney's fees for the city council members are invalid.

Because the resolutions authorizing the payment of city council members' attorney's fees are invalid, we need not address your remaining questions. However, your second question raises an issue that warrants discussion: the city's payment from public funds of officers' and employees' attorney's fees in criminal cases. This office has written numerous opinions on the payment of public servants' legal expenses in civil cases brought against them individually. *See, e.g.*, Tex. Att'y Gen. Op. Nos. JM-968 (1988) (school district may expend funds in defense of lawsuit alleging intentional tort); H-887 (1976) (general-law city may authorize expenditures for defense of city employees and officials sued for actions within scope of public duties). When questions about paying attorney's fees in criminal cases have arisen, this office has in the past assumed that the standards applicable in civil lawsuits are equally relevant to criminal cases. *See* Tex. Att'y Gen. Op. No. DM-488 (1998) (appraisal district may reimburse chief appraiser for representation in criminal proceeding); Tex. Att'y Gen. LO-97-049 (overruled to extent inconsistent with DM-488) (school district may pay for legal representation of employee in a criminal proceeding); LO-89-012 (county may pay attorney's fees incurred in connection with grand jury investigations of county commissioners). However, the payment from public funds to defend a public servant in a criminal prosecution raises issues not necessarily raised in the context of a civil suit. Our discussion will begin with a review of the opinions on payment of an officer's or employee's attorney fees in a civil case.

In Texas Attorney General Letter Advisory No. 24 (1973), this office addressed the predecessor of Local Government Code section 157.901, which provides in part:

> (a) A county official or employee sued by any entity, other than the county with which the official or employee serves, for an action arising from the performance of public duty is entitled to be represented by the district attorney of the district in which the county is located, the county attorney, or both.

> (b) If additional counsel is necessary or proper in the case of an official or employee provided legal counsel under Subsection (a) or if it reasonably appears that the act complained of may form the basis for the filing of a criminal charge against the official or employee, the official or employee is entitled to have the commissioners court of the county employ and pay private counsel.

> . . . .

TEX. LOC. GOV'T. CODE ANN. § 157.901(a), (b) (Vernon 1999). This provision does not entitle county officers and employees to representation at public expense in criminal cases. *See White v. Eastland County*, 12 S.W.3d 97, 103 (Tex. App.–Eastland 1999, no pet), Tex. Att'y Gen. Op. No.

JM-755 (1987) at 3-5 (construing predecessor to provision in Local Government Code section 157.901(b) on filing a criminal charge against the official or employee).

Letter Advisory No. 24 determined that using county funds to defend county officers and employees sued individually would not violate Texas Constitution article III, section 52, which prohibits grants of public money in aid of individuals. *See* Tex. Att'y Gen. LA-24 (1973) (addressing the predecessor of Local Government Code section 157.901, *adopted as* Act of May 24, 1973, 63d Leg., R.S., ch. 644, 1973 Tex. Gen. Laws 1765). It noted that "[p]ublic money cannot be spent to defend private interests," but "suits may be only nominally against individuals when they are really designed to obstruct or control the legitimate performance of official duties." Tex. Att'y Gen. LA-24 (1973) at 2; *see also City Nat'l Bank of Austin v. Presidio County*, 26 S.W. 775, 777 (Tex. Civ. App. 1894). Such litigation in fact does involve the interests of the county. *See Presidio*, 26 S.W. at 775. *See generally* Tex. Att'y Gen. Op. No. JM-755 (1987) at 5 (suits brought by private individuals against public servants for official acts may be merely vexatious). Letter Advisory No. 24 cautioned that the county could not provide a defense if only the defendant officer's or employee's private interests were at stake, even though the suit was based on an action taken ostensibly in the performance of public duties. *See* Tex. Att'y Gen. LA-24 (1973) at 3-4. It concluded that representation of a county official or employee believed in good faith to have been acting within the proper scope of his authority "is not illegal even though such confidence may prove to have been misplaced." *Id.* at 3.

Other attorney general opinions determined that political subdivisions, including counties, have common-law authority to pay the legal expenses of officers and employees in civil cases where the interests of the political subdivision are at stake. *See* Tex. Att'y Gen. Op. Nos. H-887 (1976) (city); DM-488 (1998) (appraisal district); JM-968 (1988) (school district); M-726 (1970) (county). The governing body's decision to pay for an officer's or employee's defense is governed by the standard articulated in Letter Advisory No. 24. *See* Tex. Att'y Gen. Op. Nos. JM-968 (1988) at 3 (board of trustees may pay trustee's legal expenses if it determines that the suit involves the interest of the school district and the officer's "actions . . . were undertaken in good faith within the scope of an official duty"); H-887 (1976) at 3 (when city council believes in good faith that the city's interests are at stake, even though an officer or employee is sued individually, the city may employ an attorney to defend the action).

Opinions subsequent to Letter Advisory No. 24 have reiterated the importance of the governmental body's good faith belief that a public servant acted within the proper scope of his or her authority and, more important, have stated that the disposition of the lawsuit is irrelevant to the question of paying attorney's fees. *See* Tex. Att'y Gen. Op. Nos. JM-968 (1988) at 2-3 (school board may pay legal expenses of trustee sued for intentional tort if it makes the proper determinations and need not conclude that the officer is blameless); MW-252 (1980) at 1 (the propriety of defending an action against a public officer or employee "'is not made dependent upon the outcome of the litigation, but upon the bona fides of the governing body's motive'") (quoting Tex. Att'y Gen. Op. No. H-70 (1973) at 5). *See also* Tex. Att'y Gen. Op. No. DM-488 (1998) at 6. The statute at issue in Letter Advisory No. 24 authorized the county to provide an attorney for a

county officer or employee soon after the lawsuit was filed, so that this statement was reasonable in the context of that opinion and in any other case where the decision to represent was made soon after the lawsuit was filed. *See* Tex. Att'y Gen. Op. No. DM-107 (1992) at 3 (overruled to extent inconsistent with DM-488); Tex. Att'y Gen. LO-90-93, at 2-3 (overruled to extent inconsistent with DM-488). For several years, this office took the position that reimbursement was not permissible and that the governmental body's decision must be made early in the litigation. Attorney General Opinion No. DM-488 (1998) finally made it clear that a political subdivision could reimburse an officer or employee for legal expenses incurred in a suit challenging actions taken within the scope of his or her official authority. *See* Tex. Att'y Gen. Op. No. DM-488 (1998) at 3, *overruling in part,* Tex. Att'y Gen. Op. No. DM-107 (1992); Tex. Att'y Gen. LO-97-065, LO-97-049, and LO-90-93.

The major issue in Attorney General Opinion DM-488 was whether an appraisal district was permitted to reimburse the chief appraiser for legal expenses after the judicial proceedings were over. No emphasis was given to the fact that the appraiser had been a defendant in a criminal prosecution. The fact that the chief appraiser prevailed in the action was said to be irrelevant to the appraisal board's decision to reimburse. *See* Tex. Att'y Gen. Op. No. DM-488 (1998) at 6. *See also* Tex. Att'y Gen. LO-89-12, at 3 (approving payment of county judge's and county commissioners' attorney's fees incurred in connection with grand jury investigation); Tex. Att'y Gen. Op. No. MW-252 (1989) (addressing payment of attorney's fees for public officer who lost civil suit).

However, we believe the outcome is particularly important when a public official faces criminal charges brought by the state, rather than a civil suit brought by a private individual. *See generally White v. Eastland County,* 12 S.W.3d at 104 (more safeguards against criminal actions being filed than civil lawsuits). This view is consistent with most of the Texas authorities on payment from public funds of a public servant's legal fees in a criminal prosecution, as well as authorities from other states. *Cf. City of Corsicana v. Babb,* 290 S.W. 736 (Tex. Comm'n App. 1927, judgm't adopted) (authority of city to employ an attorney to defend policemen indicted for killing an individual in attempt to arrest him).

Two cases involving the actions of the Del Rio city commission in issuing bonds and warrants found it unlawful for city commission members to approve payment of their own attorney's fees to defend against prosecutions for offenses charged in either their private or official capacity. *See City of Del Rio v. Lowe,* 111 S.W.2d 1208, 1219 (Tex. Civ. App.–San Antonio 1937), *rev'd on other grounds,* 122 S.W.2d 191 (Tex. 1938), *State ex rel. La Crosse v. Averill,* 110 S.W.2d 1173 (Tex. Civ. App.–San Antonio 1937, writ ref'd). The court of civil appeals decision in *Lowe* found that there was no public purpose in the city's paying legal fees for the city commissioners and that the city commissioners also had a conflict in approving payment of their own attorney's fees. *See Lowe,* 111 S.W.2d at 1218-19; *see also White v. Eastland County,* 12 S.W.3d at 103 (discussing *Lowe* and *Averill*).

While the conclusion in *Lowe* that no public purpose was served by the city's paying the city commissioners' legal fees has not been overruled, we believe the strict prohibition against using public funds to defend public officers in criminal prosecutions would not be followed today. The

court in *Crider v. Cox*, 960 S.W.2d 703 (Tex. App.–Tyler 1997, pet. denied), addressed the county's attempt to pay an attorney for representing the county judge in misdemeanor charges of attempting to secure dismissal of traffic tickets in cases before his court. Upon trial of the charges, the county court-at-law decided in the county judge's favor by quashing the indictment. *See Crider*, 960 S.W.2d. at 704. The attorney submitted his bill, which the commissioners court approved without the county auditor's approval. *See id.* The attorney filed a mandamus proceeding against the auditor to compel her to audit and approve the bill and issue and sign a county check in payment of his claim. *See id.*

The application for the writ of mandamus was denied because the auditor's approval of the claim was a discretionary act. *See id.* at 707. In deciding whether to approve the bill, "the Auditor was required to resolve several daunting questions," including the following:

> (1) Was [the County judge's] conduct leading to the criminal charges undertaken in the performance of [his] public duties as County judge?
>
> . . . .
>
> (3) [Was] the County obligated to pay for legal services when there was no agreement or contract between the county and the claimant before the services were rendered?

*Id.* The court noted that the attorney offered no rationale to explain the county's interest in the dismissal of the traffic tickets and that a legal opinion received by the auditor from the criminal district attorney had found that county funds could not be expended on the county judge's legal fees. *See id.* n. 4. *Crider* suggests that the conduct giving rise to the criminal prosecution must be closely scrutinized.

In *White v. Eastland County*, the county sheriff sued the county for payment of his costs in defending against criminal charges for removing a private fence blocking a county road, acting at the direction of the commissioners court and with the assistance of a county commissioner. The court determined that the county had no duty to defend the sheriff and stated as follows:

> In other jurisdictions, both statutory and common law generally authorize reimbursement only if the underlying suit or criminal charge arose out of the good faith discharge of an official duty in which the government or public had an interest and if the official prevailed in that suit. Many state courts, like Texas, have found that there is a discretionary power to reimburse officials for their legal fees, but others have found a duty of reimbursement where the official was successful.

> The policy issues are best considered by our legislature. The Texas legislature has addressed the problem of frivolous lawsuits against county employees and their cost of counsel in Section 157.901 [of the Local Government Code]. Although there may be more safeguards against criminal actions being filed than civil lawsuits, the legislature may wish to consider when or if county officials and employees should be entitled to reimbursement for legal fees spent in defending against criminal charges arising out of actions clearly done in the scope of their duties.

12 S.W.3d at 104 (citation omitted).

The legislature has in fact authorized the state under certain circumstances to pay the attorney's fees incurred by state officers and employees in defending a criminal prosecution. This statute is included in chapter 104 of the Civil Practices and Remedies Code, which provides for indemnifying state officers and employees for damages and other costs adjudged against them in a lawsuit based on conduct in the scope of their employment. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 104.001, .002 (Vernon 1997). Section 104.0035 of the code provides for indemnifying a state officer or employee for reasonable attorney's fees incurred in defending a criminal prosecution if "the attorney general determines that the conduct for which the person is criminally prosecuted could give rise to a civil cause of action covered by Section 104.002 [providing for indemnification in civil suits]." *Id.* § 104.0035(a)(2). There are additional conditions. The person must be found not guilty after a trial or appeal, or the complaint, information, or indictment must be dismissed without a plea of guilty or nolo contendere being entered and it must have been dismissed because it was based on mistake, false information, or a similar error. *See id.* § 104.0035(a)(3), (4). Thus, section 104.0035 is directed at indemnifying only the innocent public servant for attorney's fees incurred in defending a criminal action.

Because no legislation applicable to political subdivisions governs the payment of attorney's fees in criminal cases, we must answer your second question on the basis of the policy reflected in analogous statutes, the cases cited in this opinion, and the law of other states. *See generally* Kimberly K. Winbush, Annotation, *Payment of Attorneys' Services in Defending Action Brought Against Officials Individually as Within Power or Obligation of Public Body*, 47 A.L.R. 5th 553, 599 (1997) (legal fees of public officials may be paid from public funds only if the official successfully defends criminal charges arising from his or her official responsibilities). We find a Florida case helpful in defining the public interest that might be served by spending public funds to defend members of a governmental body against prosecution for Open Meetings Act violations. *See Askew v. Green, Simmons, Green and Hightower, P.A.*, 348 So. 2d 1245 (Fla. Dist. Ct. App. 1977), *cert. denied*, 366 So. 2d 879 (Fla. 1978). *Askew* addressed the validity of a county ordinance authorizing the payment of public funds for a county commissioner's successful defense of prosecution for violation of the "open public meetings law." *Id.* at 1246-47. The ordinance benefitted only those commissioners whose alleged offense was conducting public business in private, and who were not found guilty. *See id.* It did not purport to authorize payment for legal expenses of commissioners

charged with "bribery, acceptance of unauthorized compensation, or other general criminal statutes."
*Id.*

The court found that the expenditure served a public purpose, not the private interest of the individual county commissioners, stating that:

> there is no public interest in defending guilty officials from prosecution. But it does not follow, absent general law declaring it, that the legislative body of a county is incompetent to relieve innocent officials, prosecuted as officials for conduct while discussing or taking action on county business, from the financial burden of unjustified prosecutions.

*Id.* at 1248. Thus, the county could reasonably find that there was a public purpose in expending public funds to pay "certain costs of unjustified criminal prosecutions of county officers" for alleged violations of the public meetings act. *Id.*

Both the Florida case and Texas Civil Practices and Remedies Code section 104.0035 require the officials to be innocent of the charges as a condition to payment of the attorney's fees from public funds. We believe that a Texas court would find that a city governing body is authorized, but not required, to reimburse a member of the city council for attorney's fees incurred in defending against criminal charges under the Open Meetings Act, that the act must have been done in the bona fide performance of official duties and that a public interest, rather than a private interest of the individual officer, is served by the expenditure. *See generally* Tex. Att'y Gen. Op. No. JM-824 (1987) at 2 (lawfulness of spending public funds to protect public interest in suit against a public official or employee is a question of fact). Most important, we believe a Texas court would hold, like the Florida court in *Askew,* that there is no public interest in defending a guilty official from prosecution.

The city may not pay the expenses of an official who is found guilty of the charges and must therefore defer its decision to pay the legal expenses until after disposition of the charges. Attorney General Opinion DM-488 is overruled as to its statement that the outcome of the criminal case is not relevant to the appraisal board's decision to reimburse the chief appraiser for his attorney's fees in defending against a criminal charge.

You finally ask whether revenues from the municipal water utility system may be used to pay the attorney's fees of the mayor and city council members if the resolution authorizing payment specified that the monies were to be derived from the city budget, *i.e.*, the general fund. *See* Request Letter, *supra* note 2, at 1, 4. The resolutions adopted by the city council called for the city's budget to be amended for the "stated purpose." *Id.* at 4. After the meeting, it was apparently determined that there were insufficient funds in the general fund to pay the approved legal fees, and the mayor ordered the city secretary to pay the attorney's fees from the water system fund. *See id.* Because we concluded that the city council resolutions authorizing payment of the attorney's fees are invalid,

your third question is hypothetical. We will, however, address the use of city water revenues to pay attorney's fees where such fees have been validly authorized.

The City of Elmendorf owns and operates its own water department as authorized by chapter 402 of the Local Government Code. *See* Brenan Brief, *supra* note 1, at 3. The revenues of the department are not encumbered by bonds or impact fees. *See id.* Section 402.001(b) of the Local Government Code provides that "[a] municipality may purchase, construct, or operate a utility system inside or outside the municipal boundaries and may regulate the system in a manner that protects the interests of the municipality." *See* TEX. LOC. GOV'T ANN. § 402.001(b) (Vernon 1999); *see also id.* § 402.001(a) (defining utility system to mean a "water, sewer, gas, or electricity system"). According to the plain meaning of section 402.001(b) of the Local Government Code, a city may regulate a utility system to protect the interest of the city. *See* TEX. GOV'T CODE ANN. § 311.011(a) (Vernon 1998) (stating that words of statutes are to be read in context and construed according to the rules of grammar and common usage). A city may collect sewer charge revenues that render a profit to the city and may place them in the general revenue fund to use for public purposes. *See Bexar County v. City of San Antonio*, 352 S.W.2d 905, 908 (Tex. Civ. App.–San Antonio 1961, writ dism'd); *see also City of Texarkana v. Wiggins*, 246 S.W.2d 622 (Tex. 1952) (city operated water system at a profit). The water system revenues of City of Elmendorf are handled in the same way. The city's attorney informs us that "[t]he Elmendorf water system is proprietary in nature, and provides the bulk of the revenues for operation of the city government." Brenan Brief, *supra* note 1, at 3. Accordingly, we find no statutory prohibition against placing water system revenues in the city's general fund to be used for public purposes. The city's budget must in fact show "the funds received from all sources during the preceding year," and the "funds available from all sources during the ensuing year." TEX. LOC. GOV'T CODE ANN. § 102.003(b)(3), (4) (Vernon 1999). If the city council were to take valid action to pay the attorney's fees of a city council member, the fees could be paid from water system revenues.

## S U M M A R Y

A city council member is disqualified from voting on a resolution to pay his or her own legal fees or the legal fees of another city council member indicted on the same facts for the same offense.

Although it is not required to do so, a city council may spend public funds to reimburse a city council member for the legal expenses of defending against an unjustified prosecution for Open Meetings Act violations. It may not decide to pay for such legal expenses until it knows the outcome of the criminal prosecution. The city may not pay the expenses of a city council member who is found guilty of such violations.

If the city council were able to take valid action to pay the attorney's fees of a city council member, the fees could be paid from the revenues of the city's water system revenues operated under chapter 402 of the Local Government Code.

Attorney General Opinion No. DM-488 (1998) is overruled with respect to its statement that the disposition of charges in a criminal case against a chief appraiser is not relevant to the appraisal board's decision to reimburse him for his legal fees in defending against the charges.

Yours very truly,

JOHN CORNYN
Attorney General of Texas

ANDY TAYLOR
First Assistant Attorney General

CLARK KENT ERVIN
Deputy Attorney General - General Counsel

SUSAN D. GUSKY
Chair, Opinion Committee

Susan L. Garrison
Assistant Attorney General - Opinion Committee