[Civil No. 4859.   Filed November 19, 1945.]

[163 Pac. (2d) 671.]

JAMES F. McDONALD, as Superintendent of the Bureau of Criminal Identification of the State of Arizona, and as Assignee of DANIEL B. O. SMITH, Assistant to the Superintendent of the Bureau of Criminal Identification of the State of Arizona, Petitioner, v. ANA FROHMILLER, as State Auditor of the State of Arizona, Respondent.

Mr. Terrence A. Carson, Messrs. Cox, Lockwood & Lockwood, Mr. J. Fred Talley, for Petitioner.

Mr. Charles L. Strouss, for Respondent.

LaPRADE, J.—The petitioner James F. McDonald, as Superintendent of the Bureau of Criminal Identi-

fication of the State of Arizona and as assignee of Daniel B. O. Smith, Assistant Superintendent of the Bureau of Criminal Identification of the State of Arizona, directly filed in this court his petition for a writ of *mandamus* directed to Ana Frohmiller as Auditor of the State of Arizona. By his petition he seeks to compel the issuance of certain claimed salary warrants. An alternative writ was issued directing the auditor to issue the warrants or show cause in this court for noncompliance with the court's order. The petitioners, James F. McDonald and Daniel B. O. Smith, were at all times herein referred to respectively Superintendent and Assistant Superintendent of the Bureau of Criminal Identification of the State of Arizona, and in daily attendance in the performance of their duties.

The Bureau of Criminal Identification was established by the legislature in 1929. The Act covering its character and duties is found in the Code of 1939 in Art. 2 of Chap. 45 (Secs. 45–201 to 45–214, Arizona Code Annotated 1939). Thereby there was established two state offices; one that of superintendent and the other that of assistant superintendent. In both cases the salary was specifically fixed by the law; that of the superintendent at $3,600 per year, and for the assistant superintendent $2,400. The superintendent holds for a term of two years and until his successor is duly appointed and qualified; the assistant superintendent holds by appointment and subject to the will of the superintendent, but cannot be dismissed without cause. The legislature in 1945 attempted to abolish the Bureau of Criminal Identification, but the bill was vetoed by the governor and was not passed over the veto. This left Art. 2, Chap. 45, establishing the bureau, in full force and effect. The legislature in 1945 failed to make any appropriation to meet the expenses and salaries provided by said article. The existing appropriation made in the general appropriation of

1943 expired on July 1, 1945. Thereafter (September, 1945) the legislature in special session made an appropriation for the salaries of the two officers to the 1st of September, 1945, but no more. These officers, believing that they were entitled to their salaries, made application to the auditor for salary warrants for September and the first half of October. She declined to issue warrants for that period, and this proceeding was brought to determine whether or not it was her duty to do so, notwithstanding that the legislature had failed to make a biennial appropriation for their salaries covering the period in question.

The legal question presented by this situation has been before this court twice; once in the case of *Windes* v. *Frohmiller,* 38 Ariz. 557, 3 Pac. (2d) 275, and again in *Crawford* v. *Hunt,* 41 Ariz. 229, 17 Pac. (2d) 802. In the Windes case the question was raised as to whether the creation of the office and the fixing of the salary by the Constitution was not and of itself an appropriation regardless of further action by the legislature. After discussing the cases fully and citing many authorities, this court was of the unanimous opinion that such constitutional provision created a continuing appropriation which was beyond the power of the legislature to take away, and ordered the auditor to issue the warrants prayed for. In the Crawford case, the office in question was created by an act of the legislature, and the Act, like the constitutional provision, fixed the salary and duties of the officer and provided that he should be paid. The legislature later attempted to appropriate money to pay the salary, but this particular appropriation was vetoed by the governor. The questions raised by Windes v. Frohmiller, *supra,* were also raised in the Crawford case, and the additional one that the office, being a statutory one, might be abolished by the legislature. The court agreed with this last contention but said that the legislature, as

long as the office existed, could not refuse to appropriate money for the salary and thereby deprive the officer of that which the statute creating the office had said "he shall receive."

With these two established principles before the auditor it would seem at first flush that she should not have questioned the propriety of issuing the warrants in the case at bar, but, with her usual zeal to protect the state's monies, she declined to issue the warrants and is looking to this court for further guidance. Her uncertainty for authority to issue the warrants has its origin in the action of the legislature in adopting Chap. 86, S. L. 1943. This Act had for its purpose the repeal of specific continuing and recurring appropriations. The auditor questions whether Chap. 86 has not had the effect of repealing the continuing appropriations such as were held to exist in the Crawford case. The case of *Hudson* v. *Brooks,* 62 Ariz. 505, 158 Pac. (2d) 661, we think answers the auditor's question in the negative. The implied continuing appropriation here is a special one resulting as a matter of law and obviously was not and could not be considered to be within the contemplation of the legislature when it repealed certain continuing appropriations covered by Chap. 86, *supra,* as we will more specifically point out.

With reference to petitioner's claim for warrants as assignee, the auditor's position substantially is that the principles laid down in Crawford v. Hunt and Windes v. Frohmiller do not apply to the assistant superintendent for the reason that his term is not definitely limited by law and that, therefore, the provisions of Sec. 17, Pt. 2, Art. 4 of the Constitution do not apply to him. The applicable portion of the constitutional provision reads as follows:

"§ 17. . . . nor shall the compensation of any public officer be increased or diminished during his term of office, . . . ."

It is apparent, of course, that the express holding in Crawford v. Hunt, *supra,* that the legislature may not abolish or alter a continuing appropriation already made during the term of the officer for whose salary the continuing appropriation was made because of the limitation of Sec. 17, Pt. 2, Art. 4 of the Constitution applies only to an office with a fixed term. *State ex rel. Colo. River Comm. of Arizona* v. *Frohmiller,* 46 Ariz. 413, 52 Pac. (2d) 483; *Coleman* v. *Lee,* 58 Ariz. 506, 121 Pac. (2d) 433. Nevertheless, we are of the opinion that the fundamental principles on which it was held that a continuing appropriation was made by the creation of the office and fixing of the salary in both the Windes and Crawford cases are just as applicable to offices where the term is not fixed as to those in which it is expressly limited to a definite period.

In arriving at this conclusion we make the following analysis of what we consider to be the principles involved: first, we must determine whether Daniel B. O. Smith is a public officer; second, whether there was a continuing appropriation; and, third, whether such continuing appropriation, if made, has been repealed.

As far as the first point is concerned we think that it cannot be seriously questioned that the assistant superintendent provided for by Chap. 16 of the Regular Session Laws of 1929 is a public officer. Secs. 3 and 4 of said chapter, (the Arizona Code Annotated 1939 code sections are 45–203 and 45–204), read as follows:

"45–203. *Assistant superintendent.*—The superintendent shall appoint an assistant who shall be an identification expert, skilled in the science of finger prints and other methods of identifying criminals, who shall receive an annual salary of twenty-four hundred dollars ($2,400). Such assistant shall *hold office* subject to the will of the superintendent but shall not be dismissed without cause.

"45–204. *Oath and bond of superintendent and assistant.*—The superintendent and assistant superin-

tendent shall, before entering upon the discharge of their respective duties, suscribe (subscribe) to the usual *oath of office* and furnish a bond for the faithful performance of their duties in a sum to be prescribed by the governor. Premium for said bonds shall be paid from the funds hereinafter appropriated for defraying the expenses of this bureau and the said bonds shall be filed in the office of the secretary of state." (Italics ours.)

Therein it is expressly stated that he shall hold "office"; it is also provided that he must subscribe to the "usual oath of office." His duties obviously are to assist the superintendent in performing his duties. Both the superintendent and the assistant superintendent have every qualification necessary to constitute them public officers instead of mere employees. *Winsor* v. *Hunt,* 29 Ariz. 504, 243 Pac. 407; *State* v. *Frohmiller,* 46 Ariz. 413, 52 Pac. (2d) 483. We think, however, it is unnecessary to go beyond the express language of the statute which says that the assistant shall hold "office" to establish that the legislature meant that he should be a public officer rather than a mere employee. That he holds an "office" and is an "officer" within the meaning of Sec. 12–101, Arizona Code Annotated 1939, is beyond question. The section referred to appears under Chap. 12, Arizona Code Annotated 1939, relating to public officers:

"12–101. *Definitions.*—By the word 'office,' 'board,' or 'commission,' used in law, is meant any office, board or commission of the state, or any political subdivision thereof, the salary or compensation of the incumbent or members of which is paid out of a fund raised by taxation, or by public revenue; by the words 'public institution' is meant any institution the maintenance of which is paid out of a fund raised by taxation, or by public revenue; by the word 'officer,' or 'public officer,' unless the context otherwise requires, is meant the incumbent of any office, member of any board or commission, his deputy or assistant exercising the powers

and duties of such officer other than clerks or mere employees of such officer.''

We consider next the question of whether or not there was a continuing appropriation made for the salary of the assistant superintendent by the act establishing the office. It will be noted that Sec. 45–203, Arizona Code Annotated 1939, says that the superintendent ''shall'' appoint the assistant; that he ''shall'' receive an annual salary of $2,400. These two sections are mandatory that the office of assistant superintendent shall be filled and that he shall be paid a fixed salary. Sec. 12–709, Arizona Code Annotated 1939, reads as follows:

''12–709. *Legal salary only to be received and in full, payable semi-monthly.*—The salaries provided in this chapter shall be in full compensation for all services rendered by an officer, deputy or assistant. Salaries shall be paid twice in each month on regular days not more than sixteen (16) days apart. All state or county officers, employees, members of boards and commissions not mentioned in this chapter, and all deputies, stenographers, clerks and employees of any officer, board or commission, or of any institution, *shall receive* the salary provided by the laws creating or authorizing their respective positions, and shall not, under any pretext, receive any salary or emolument in excess of the salary so provided by law.'' (Italics ours.)

We have, therefore, a positive mandate of the legislature that the assistant superintendent shall be appointed; that he shall be paid a salary of $2,400 per year; and that he shall be paid in the same manner as provided for all other state officers.

The decisions are practically unanimous that such a situation creates a continuing appropriation sufficient to both authorize and require the financial officers of the state to pay the salary fixed by the law (Crawford v. Hunt, *supra;* Windes v. Frohmiller, *supra;* and cases cited therein) and this applies to

officers whose terms are not limited to specific periods as well as to those whose terms are so limited. The Supreme Court of Colorado has had this question before it repeatedly. See *People* v. *Goodykoontz,* 22 Colo. 507, 45 Pac. 414; *Leddy* v. *Cornell,* 52 Colo. 189, 120 Pac. 153, 38 L. R. A., N. S., 918. In the case of *People ex rel. Fulton* v. *O'Ryan,* 71 Colo. 69, 204 Pac. 86, the statute under consideration provided for the appointment of a secretary of the State Board of Charities and Correction, but did not fix a definite term for such officer. Her salary, however, was fixed in the manner provided by the statute. It was held, following a long list of cases cited, that such action was a continuing appropriation. See also *Gilbert* v. *Moody,* 3 Idaho 3, 25 Pac. 1092. We know of no case holding to the contrary, and we think the weight of authority is overwhelming to the effect that when the office is definitely created, the salary definitely fixed, and it is provided that the officer shall either "be paid" or "receive" the salary, a continuing appropriation exists, regardless of how the officer is chosen or for how long he holds the office.

■■ We hold that Secs. 4–308, 4–309, and 12–204, Arizona Code Annotated 1939, have no application in the instant case in view of our holding that there has been an appropriation by the legislature to pay these salaries. The object of the code provisions just cited is to prevent the payment of money from the state treasury when no appropriation has been made by law, and to prohibit the expenditure of public funds at the pleasure or will of the person having the funds in custody without direct legislative sanction thereof. We hold that there is and has been the legislative sanction for the payment of these salaries.

The third question is whether or not such continuing appropriation has been repealed. Respondent suggests that this is done by Chap. 86 of the Regular Session

Laws of 1943, sometimes referred to as the "Czarina" bill. A careful examination of this chapter discloses nothing therein repealing any continuing appropriation or even referring thereto except those referred to in Sec. 17 of Art. 4 of the Act which reads as follows:

"Sec. 17. *Continuing and recurring appropriations repealed.* Effective July 1, 1943, all continuing or recurring appropriations heretofore made for the use of any state departments or agency from or consisting of any specified source of revenue or a percentage of the receipts and collections of specified revenue, or a percentage of, or amounts equal to a stated percentage of specified expenditures are hereby abolished and repealed, and the total amount of all receipts and collections from any and all sources except those separate funds provided for in this Act, shall be paid into the general fund of the state without any deductions whatsoever to be applied to the purpose and objects for which they were levied or assessed, but always subject to the regulation and control of this Act and of any appropriation Act dealing therewith. Articles 1 and 2 of chapter 10, Arizona Code of 1939. (Articles 1 and 2, chapter 60, Revised Code of 1928), and all Acts and parts of Acts in conflict herewith are hereby repealed."

It will be observed that "all continuing or recurring appropriations" which are abolished and repealed by the section are appropriations "from or consisting of any specified source of revenue or a percentage of the receipts and collections of specified revenue, or a percentage of, or amounts equal to a stated percentage of specified expenditures."

The continuing appropriation made by Secs. 45–202 and 45–203, Arizona Code Annotated 1939, was not made from any of the sources referred to in Sec. 17, *supra,* but was an appropriation from the general fund and is, therefore, in no manner affected by the specific repeals set forth in Sec. 17. *Hudson* v. *Brooks* 62 Ariz. 505, 158 Pac. (2d) 661. Said Sec. 17 further repeals Art. 1 (State Budget System) and Art. 2 (State

Financial Code) of Chap. 10, Arizona Code Annotated 1939, but an examination of these sections shows that the continuing appropriation for the salaries of the superintendent and assistant superintendent of the Bureau of Criminal Identification has no relation whatever to the repealed articles.

Our holding that there is a continuing appropriation in this case is not based on the provisions of Sec. 17, Pt. 2, Art. 4 of the Constitution, and it, therefore, necessarily follows that it is within the power of the legislative authority, if it so desires, to not only abolish the office of assistant superintendent entirely, but to change his salary either up or down at any time it sees fit. But no change has been made. The lawmaking power in Arizona is composed of the two houses of the legislature and the governor in the exercise of his veto power, and all laws, either creating or repealing, must have the approval of all three of these branches of the lawmaking power. Crawford v. Hunt, *supra*. Chapter 16, *supra* (the Act creating the bureau) was so approved. The only reason why a specific appropriation was not made for the payment of the salaries of the superintendent and assistant superintendent for the fiscal year ending June 30, 1947, was that one of the three branches desired it while the other two disapproved it. These three branches of the lawmaking power of the government created the office and made the continuing appropriation, and while they, *acting together,* may change or alter the law so made at their pleasure, it takes all three of them concurring to make the alteration. Until the three concur in undoing what they have done, under the fundamental principles upon which all the cases discussing similar questions are based, the continuing appropriations originally made are still in force, and it is·the duty of the auditor to issue her warrants for the salaries of the

superintendent and assistant superintendent in accordance herewith.

The alternative writ heretofore issued is made peremptory.

STANFORD, C. J., and MORGAN, J., concur.