510 P.2d 376

HOME BUILDERS ASSOCIATION OF CEN-
TRAL ARIZONA, INC., a nonprofit Ari-
zona corporation, for and on behalf of all
members of the Association and all oth-
ers similarly situated, Continental Homes,
Inc., an Ohio corporation, Chamberlain
Lumber Company, Inc., an Arizona corpo-
ration, Knoell Brothers Construction, Inc.,
an Arizona corporation, Hallcraft Homes,
Inc., an Arizona corporation, Mission Viejo
Company, Inc., a California corporation,
Douglas P. Patterson Development Co.,
Inc., an Arizona corporation, and Ellis
Suggs Construction Co., an Arizona corpo-
ration, Petitioners,

v.

Marilyn RIDDEL, Judge, Division 19, Su-
perior Court of Maricopa County; CITY
OF TEMPE, a municipal corporation, the
Council of the City of Tempe, comprised
of Dale R. Shumway, Mayor, Joseph
Dwight, Arthur L. Livingston, William J.
Lopiano, Perry E. Mitchell, Dorothy C.
Nelson, Richard G. Neuheisel, Councilmem-
bers, David R. Scott, Director of Build-
ing Inspection, real parties in interest, Re-
spondents.

No. 10986.

Supreme Court of Arizona,
In Banc.

May 21, 1973.

Rehearing Denied July 3, 1973.

Carmichael, McClue & Stephens, P.C. by L. James Martin, Phoenix, for petitioners.

David R. Merkel, Tempe City Atty., Tempe, for respondents.

STRUCKMEYER, Justice.

This Special Action was brought to review a summary judgment of the Superior Court of Maricopa County determining that the City of Tempe was constitutionally exercising its municipal taxing power.

Other municipalities are interested in enacting a similar tax and, it appearing that the matter was of statewide concern and that this writ would be a more speedy and adequate remedy, we accepted jurisdiction. Ariz.Const., Art. 6, § 5, subsec. 4, A.R.S.

On the 9th of September, 1971, the City of Tempe enacted its Ordinance No. 659. The ordinance called for the payment of a "Parks and Recreation Facility Tax" of $100.00 for each house and $50.00 for each apartment by every person thereafter constructing any dwelling unit. Petitioners tendered payment of the tax under protest, and then brought suit in the Superior Court seeking a declaration that the tax imposed was void and for an order directing that the taxes paid be refunded. From the judgment that the tax was a lawful, constitutional exercise of Tempe's municipal taxing power, this special writ was sought.

We have examined the three sources of power Tempe relies upon to support its exaction and have concluded that neither the Constitution of Arizona, Tempe's Charter, nor the several legislative enactments relied on legally sustain the imposition or collection of this tax.

The City urges that Article 9, § 12, of the Arizona Constitution provides adequate constitutional authority for the imposition of its Parks and Recreation Tax. Article 9, § 12, reads:

> "The law-making power shall have authority to provide for the levy and collection of license, franchise, gross revenue, excise, income, collateral and direct inheritance, legacy, and succession taxes, also graduated income taxes, graduated collateral and direct inheritance taxes, graduated legacy and succession taxes, stamp, registration, production, or other specific taxes."

Tempe does not specify why it believes Article 9, § 12, has application here. But if it means that the legislative bodies of municipalities are included in the term "The law-making power", we unhesitatingly reject such a supposition.

In the Committee of the Whole of the Constitutional Convention, November 19, 1910, Mr. Fred L. Ingraham, a delegate from Yuma, moved the adoption of what is now Article 9, § 12, stating that it was taken from the Constitution of Oklahoma. Journal of the Arizona Constitutional Convention, November 19, 1910, at 27. An examination of Article 10, § 12, of the Constitution of Oklahoma reveals identical language, except that the Oklahoma Constitution then read: "The Legislature shall have power to provide for the levy and collection * * *."

The reason for the change from "Legislature" to "law-making power" was not discussed in the Committee of the Whole, but we think it probably resulted from the prior adoption by the Convention of the Initiative and Referendum, Article 4, Pt. 1, Constitution of Arizona. By Article 4, Pt. 1, § 1, (1), it was provided that the legislative authority of the State was vested in a legislature,

> "but the people reserve the power to propose laws and amendments to the Constitution and to enact or reject such laws and amendments at the polls, independently of the Legislature; and they also reserve, for use at their own option, the power to approve or reject at the polls any Act, or item, section, or part of any Act, of the Legislature."

The lawmaking power in Arizona was not vested exclusively in the State Legislature, but was subordinated to the superior right of the people to themselves legislate at the polls. If the word "Legislature" had been used in Article 9, § 12, it might have been construed as a restriction or limitation on the use of the Initiative and Referendum, —meaning, the Legislature had the right to provide for license and other taxes and the people did not have the right through the use of the Initiative and Referendum.

■ We do not think the term "The law-making power" was intended to include legislative action by city and town councils.

Our conclusion regarding the proper construction of Article 9, § 12, is reinforced by our former decisions. This Court has twice said that the power of taxation is to be exercised by the State Legislature and not by municipalities, unless the power is conferred specifically by charter or delegated by statute.

> "[T]he power to tax * * * exists in municipal corporations only to the extent to which it is clearly conferred by the charter or state statutes * * *." Phoenix v. Arizona Sash, Door & Glass Co., 80 Ariz. 100, 102–103, 293 P.2d 438, 439, modified, 80 Ariz. 239, 295 P.2d 854 (1956).

> "The power of taxation under the Constitution inheres in the sovereignty of the state and may be exercised only by the state Legislature. Any power over taxation possessed by municipalities is delegated." Home Owners' Loan Corp. v. Phoenix, 51 Ariz. 455, 466, 77 P.2d 818, 822 (1938).

Article 9, § 12, does not authorize municipalities to levy the taxes imposed by Tempe's Ordinance 659.

The City of Tempe is organized under what is known as a "home rule charter," framed and approved by its inhabitants under the provisions of § 2, Article 13, Constitution of Arizona. But its charter does not authorize the licensing of businesses, professions or occupations, as does that of Tucson. See, McCarthy v. Tucson, 26 Ariz. 311, 225 P. 329 (1924); Kaufman v. Tucson, 6 Ariz.App. 429, 433 P.2d 282 (1967). Nor does its charter authorize the levying of a privilege license tax, as does the charter of the City of Phoenix. See, Phoenix v. Arizona Sash, Door & Glass Co., supra. Tempe's charter provides only that it "shall have all powers possible for a city under the constitution and laws of the State of Arizona as fully and completely as though they were specifically enumerated in this charter." Charter of the City of Tempe, § 1.01.

■ Accordingly, we conclude that Tempe's charter does not specifically authorize the tax found in its Ordinance 659.

Tempe cites to both §§ 9–240, subsec. B, par. 18(a) and 9–276, subsec. A, par. 23 of the Arizona Revised Statutes as statutory authority for this tax. A.R.S. § 9–240 sets forth the general powers of *towns* formed under the provisions of A.R.S. § 9–101. Plainly, § 9–240 has no application to municipalities chartered under Article 13, § 2, of the Constitution.

A.R.S. § 9–276 enumerates the powers vested by the Legislature in cities chartered under Article 13, § 2, of the Constitution. Paragraph 23 thereof provides that cities may "Make local improvements by special assessments, by special taxation or otherwise, as they shall by ordinance prescribe." The statute is a legislative delegation of a right conditionally authorized by the Constitution, Article 9, § 6. Therein, it is provided that incorporated cities "may be vested by law with power to make local improvements by special assessments, or by special taxation of property benefited."

■ The term "local improvements" has a well understood meaning, being defined as an improvement made in a particular locality by which the real property adjacent or near is especially benefited.

" 'A "local improvement" has been defined to be a public improvement which, by reason of its being confined to a locality, enhances the value of adjacent property, as distinguished from benefits diffused by it throughout the municipality.' " Globe v. Willis, 16 Ariz. 378, 392, 146 P. 544, 549 (1915).

■ When the purpose and effect of an improvement is to improve the locality, the improvement is a local one, although there may be an incidental benefit to the general public; but when the primary effect is to benefit the public at large, the improvement is not local although it may incidentally benefit property in the particular locality. Waukegan v. De Wolf, 258 Ill. 374, 381, 101 N.E. 532, 534, 45 L.R.A.,N.S., 918, 923 (1913); Hinman v. Temple, 133 Neb. 268, 271, 274 N.W. 605, 607, 111 A.L. R. 1217, 1219 (1937).

The Ordinance of the City of Tempe, No. 659, by § IV provides:

"All sums collected pursuant to this Ordinance shall be deposited in the Parks and Recreation Facilities Fund, which fund shall be used exclusively for the acquisition, improvement and expansion of neighborhood park land, said acquisition to be in substantial accordance with Tempe's Parks and Recreation Open Space Master Plan. It is the express intention of this Ordinance that the taxes collected shall bear a direct relationship by the persons affected and the benefits to be derived by the recipients and beneficiaries of the required and necessary acquisition, improvement and expansion of neighborhood park lands."

■ The land acquisitions, improvements, and expansion contemplated are to be in accordance with Tempe's Parks and Recreation Open Space Master Plan. This plan has not been submitted as an exhibit to this Court, nor, so far as we are advised, was it exhibited to the court below, and no claim has been asserted by Tempe that the plan peculiarly benefits any of the property of the petitioners beyond those conferred on the general public. We cannot presume that the special taxes collected under the ordinance will be used for neighborhood park land at a location so as to specially enhance the value of the taxpayers' property as opposed to benefits diffused throughout the City. Special assessments and taxes should be imposed in proportion to the particular benefits supposedly conferred and can only be justified because the improvements do confer special benefits.

Nor do we think that the expression of intent stated in the ordinance that the taxes shall bear a direct relationship to the persons affected by the tax is an adequate substitute for the actual existence of special benefits in proportion to the taxes imposed.

For the foregoing reasons, we hold that Ordinance No. 659 of the City of Tempe is unconstitutional and invalid.

The judgment of the Superior Court is ordered vacated.

HAYS, C. J., CAMERON, V. C. J., and LOCKWOOD and HOLOHAN, JJ., concur.