IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

CONTRERAS FARMS LIMITED LLC, *Plaintiff/Appellant*,

*v.*

CITY OF PHOENIX, et al., *Defendants/Appellees*.

No. 1 CA-CV 18-0553
FILED 10-29-2019

Appeal from the Superior Court in Maricopa County
No.  LC 2015-000267-001
The Honorable Connie Contes, Judge

**AFFIRMED**

COUNSEL

Gillespie, Shields, Goldfarb, Taylor & Houk, Phoenix
By Kristina B. Reeves, April Maxwell
*Counsel for Plaintiff/Appellant*

Burch & Cracchiolo PA, Phoenix
By Daryl Manhart, Andrew Abraham, Casey S. Blais
*Co-Counsel for Defendants/Appellees*

Phoenix City Attorney's Office, Phoenix
By Brad Holm
*Co-Counsel* for *Defendants/Appellees*

## OPINION

Presiding Judge Michael J. Brown delivered the opinion of the Court, in which Judge Kenton D. Jones and Judge Lawrence F. Winthrop joined.

**B R O W N**, Judge:

¶1            Contreras Farms Limited, LLC ("CFL") appeals the superior court's order finding that under state law CFL was not entitled to administratively appeal a requirement to construct a water main pursuant to Phoenix City Code § 37–33(a).  For the following reasons, we affirm.

## BACKGROUND

¶2            Arizona law, by statute, gives property owners the right to an administrative appeal when a city or town requires "a[n] exaction as a condition of granting approval for the use, improvement or development of real property."  A.R.S. § 9-500.12(A)(1).[1]  The right to pursue such an appeal, however, "does not apply to a[n] . . . exaction required in a legislative act by the governing body of a city or town that does not give discretion to the administrative agency or official to determine the [exaction's] nature or extent."  A.R.S. § 9-500.12(A)(1).  In this case, we address the interplay between § 9-500.12 and a specific mandate in Phoenix City Code § 37–33(a) that requires developers to "furnish and install . . . all

---

[1]      The word "exaction" is not defined under § 9-500.12, but it has been broadly described as a land-use decision that "condition[s] approval of development on the dedication of property to public use."  *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 702 (1999); *see also Land-Use Exaction*, Black's Law Dictionary (10th ed. 2009) ("A requirement imposed by a local government that a developer dedicate real property for a public facility or pay a fee to mitigate the impacts of the project, as a condition of receiving a discretionary land-use approval.").  The City does not dispute that its decision requiring CFL to construct a water main constitutes an exaction.  Thus, our analysis does not depend on the precise meaning of the term; instead, we address only whether CFL was entitled to appeal, pursuant to § 9-500.12, the City's requirement that CFL construct a water main.

water mains . . . within the boundary of the development as well as the streets bounding the entire development."

¶3        The material facts relevant to this issue are undisputed.  Near the end of 2013, Entellus, Inc., a civil engineering firm, submitted plans to the City of Phoenix Planning & Development Department ("Department") on CFL's behalf to build a charter school at 4275 West Baseline Road (the "Property"), located at the southeast corner of the 43rd Avenue and Baseline intersection.[2]  As relevant here, the Department responded that there were no issues as to the existing 12-inch water main along Baseline Road but that under "City Code 37–33 . . . [a] 12-inch main extension will be required to be installed from Baseline to the south property line" along 43rd Avenue.  Shortly thereafter, CFL started construction of the charter school project.

¶4        Meanwhile, Entellus filed a technical appeal with the Water Services Technical Appeals Committee ("Committee") requesting that "the requirement to install a [] 12 [inch] water main extension in 43rd Avenue be deleted."   Entellus explained that (1) an existing water main was operational in the original alignment of 43rd Ave; (2) the City's water system was already operating "very robustly in the vicinity of the school site"; and (3) because the school would be connecting to the water main on Baseline, it would not use or benefit from the required main along 43rd Avenue.  The Committee denied the technical appeal "on the basis that [§ 37–33] requires all projects to install water mains *along each of its project's boundaries within paved public streets*." (Emphasis added.)

¶5        Entellus contacted the Committee, asking what the next level of appeal would be.  The Committee informed Entellus that § 37–33 could not be waived, but CFL could attempt to "demonstrate how the intent of the Code was already met," and the Director "may modify or interpret the code in a way that agrees with your rationale."  The Committee noted, however, it would be difficult to show that deleting the required water main extension would fit within the Code's intent because "the City Code is pretty clear when requiring that *all developments bound their site[s] with*

---

[2]        The City of Phoenix ("City") relocated a portion of 43rd Avenue sometime before December 2013 such that the centerline of the 43rd Avenue right-of-way located south of Baseline Road was now aligned with the centerline of the 43rd Avenue right-of-way lying north of Baseline Road. The realignment resulted in a traditional four-corner intersection.

*water*." (Emphasis added.)  CFL did not appeal the Committee's decision and proceeded with constructing the 43rd Avenue water main.

¶6            In March 2015, CFL sent the City a demand letter requesting an exaction appeal under A.R.S. § 9-500.12(A)(1) to challenge the City's decision to require installation of the 43rd Avenue water main.  The City denied CFL's request, stating that "[t]he requirement [CFL] wishes to appeal is mandated by the City Code and therefore not subject to the appeal process described in A.R.S. § 9-500.12."  CFL filed a complaint for special action in the superior court seeking declaratory relief and damages.  The court granted summary judgment in favor of the City, concluding that "[§] 37–33 . . . is generally applicable, giving no discretion to the City to deviate from its City-wide mandate for construction in furtherance of its master water grid system."  The court also awarded attorneys' fees and costs to the City.  This timely appeal followed.

## DISCUSSION

¶7            CFL argues the superior court erred in granting summary judgment because it should have been given the opportunity to challenge the City's water main requirement through an exaction appeal as contemplated by § 9-500.12.  Summary judgment is proper when the moving party "shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law."  Ariz. R. Civ. P. 56(a).  We review de novo the court's grant of summary judgment, *Ochser v. Funk*, 228 Ariz. 365, 369, ¶ 11 (2011), as well as the interpretation of statutes and ordinances, *City of Tempe v. Outdoor Sys., Inc.*, 201 Ariz. 106, 109, ¶ 7 (App. 2001).

¶8            The City required CFL to construct a water main as a condition of approving CFL's proposed construction of a charter school.  Thus, CFL had the right to challenge that requirement by pursuing an exaction appeal with the City unless the water main requirement was (1) included in a legislative act, and (2) did not give the City's officials discretion in determining the nature or extent of the required water main. *See* A.R.S. § 9-500.12(A)(1); *Am. Furniture Warehouse Co. v. Town of Gilbert*, 245 Ariz. 156, 164, ¶ 30 (App. 2018).

¶9            Neither party disputes that § 37–33(a) constitutes a legislative act as required by the first part of § 9-500.12(A)(1)'s exception.  *Home Builders Ass'n of Cent. Ariz. v. City of Apache Junction*, 198 Ariz. 493, 496, ¶ 7 (App. 2000) (stating the adoption of an ordinance "is a legislative act that carries a presumption of validity").  But the second part of the statute

4

requires interpretation of the City's municipal code to determine whether the City has discretion in deciding whether, or to what extent, the water main requirement will be imposed. *See* A.R.S. § 9-500.12(A)(1). We interpret § 37–33(a) using the "same rules and principles governing the construction of statutes" with the primary goal of "ascertain[ing] and giv[ing] effect to the intent of the law-making body." *Abbot v. City of Tempe*, 129 Ariz. 273, 275 (App. 1981). We first look to the plain language of the provision and read it in the context of the ordinance as a whole "for guidance and [to ensure we] give effect to all of the provisions involved." *Stambaugh v. Killian*, 242 Ariz. 508, 509, ¶ 7 (2017). If the ordinance is "subject to only one reasonable interpretation, we apply it without further analysis." *Wade v. Ariz. St. Ret. Sys.*, 241 Ariz. 559, 561, ¶ 10 (2017).

¶10        CFL argues the City has discretion to waive or modify the exaction because § 37–33(a) requires developers to have their plans approved by the Planning and Development Director, but it does not "mandate that a city official *must* require a developer to construct a water main." Thus, CFL contends the Director may properly approve development plans that do not include construction of water mains.

¶11        In relevant part, § 37–33(a) provides:

> In . . . all other developments, other than a single residence on a single lot, where the City is to provide water service, *the developer shall furnish and install in accordance with plans approved by the Planning and Development Director all water mains . . . within the boundary of the development as well as the streets bounding the entire development . . . .* In addition, the developer shall furnish and install all off-site water mains as necessary to complete a looped connection to existing City mains as determined by the Planning and Development Department. All water lines are to be constructed to conform with the City's water distribution master grid system, and are to be constructed as a general area improvement whether they do, or do not, directly service the property being developed.

(Emphasis added.) In adopting this language, the city council mandated that (except for a single residence on a single lot), developers must install water mains for streets bounding the development even if the water main will not "directly service the property being developed." *See* Phx. City Code § 37–33(a); *see also* Phx. City Code § 1–2 ("The word 'shall' is mandatory and the word 'may' is permissive.").

**¶12**      The city council also mandated that developers have the plans for installing the water mains approved by the Department. The logical purpose for this requirement is to ensure their plans meet acceptable engineering standards and conform with the City's water distribution master grid system. Although the Department can certainly disapprove plans that do not conform to those technical requirements, § 37–33(a) does not grant the Department discretion to determine that installation of a water main bounding the development is not necessary and thereby waive the city council's legislative mandate. In comparison, the Code plainly provides the Department discretion regarding off-site water mains because developers are only required to "furnish and install" these mains "*as necessary* to complete a looped connection . . . *as determined by the Planning and Development Department.*" *See* Phx. City Code § 37–33(a) (emphasis added); s*ee also Comm. For Pres. of Established Neighborhoods v. Riffel*, 213 Ariz. 247, 249–50, ¶ 8 (App. 2006) ("[W]e assume that when the legislature uses different language within a statutory scheme, it does so with the intent of ascribing different meanings and consequences to that language."); *cf. Am. Furniture Warehouse*, 245 Ariz. at 164, ¶ 31 (concluding the town's imposition of a fee "necessarily involve[d] discretion" because the amount of the fee was determined by the property's categorization, but the ordinance "[did] not define the categories or provide guidance in determining which category to use"). As it relates to CFL's request for an exaction hearing, § 37–33(a) is subject to only one reasonable interpretation—an owner seeking to develop property must install water mains along each street that bounds the proposed development.

**¶13**      CFL argues nonetheless that the City's determination that a 12-inch main was necessary involved a "pure exercise of discretion" because the "City could have ordered a 10-inch, 8-inch, 6-inch, 4-inch or any other size" water main. Similarly, CFL argues that "[t]he selection of both the starting point and ending point" of the water main involved discretion. As the City notes, however, CFL has waived these arguments by failing to raise them in the superior court. *See Englert v. Carondelet Health Network*, 199 Ariz. 21, 26, ¶ 13 (App. 2000) (stating "we generally do not consider issues, even constitutional issues, raised for the first time on appeal"). The only issue properly before us is whether CFL is entitled to an exaction appeal hearing based on the requirement that it install a water main along 43rd Avenue. We further note that CFL never requested an exaction hearing based on the size or length of the water main; it only challenged whether the water main had to be installed. Thus, we decline to address whether a party may be entitled to an exaction appeal based on the specific technical requirements for installing a water main.

¶14　　　　CFL further contends that if § 37–33(a) does not allow for the exercise of discretion, then it is legally invalid because it conflicts with two statutes, A.R.S. §§ 9-463.05 and 15-189.01, that CFL contends place limits on development fees.  But CFL fails to cite any authority supporting the notion that a uniformly applied requirement to construct a water main could qualify as a development fee.  And the statute authorizing the imposition of development fees, A.R.S. § 9-463.05, contains no language suggesting that it applies to these facts.

¶15　　　　Nor are we persuaded that § 37–33(a) conflicts with the plain language in either cited statute.  *See also Outdoor Sys.*, 201 Ariz. at 110, ¶ 11 (explaining that our goal in construing the interplay between state statutes and ordinances is to avoid finding a conflict).  The only possible relevance of § 9-463.05 to this case is subsection (B)(11), which contemplates that a municipality may require construction of certain facilities "as a condition of development approval," and in such a scenario, the municipality "shall provide a credit toward the payment of a development fee."  CFL has not identified any portion of the record indicating the City required it to pay a water development fee and that CFL constructed the water main with the expectation of a credit towards the fee.

¶16　　　　Finally, § 15-189.01(A) states that "[c]harter schools shall be classified the same as public schools . . . for the purposes of . . . site plan fees and development fees."  The statute's plain language does not exempt public charter schools from paying development fees or building infrastructure when required by city or town ordinances.  *See Kyrene Sch. Dist. No. 28 v. City of Chandler*, 150 Ariz. 240, 243–44 (App. 1986) (concluding a "water system development fee" and a "wastewater system development fee" were development "fees" and not taxes; therefore, the school district was not immune from paying them).  Additionally, CFL's reliance on *Apache Junction* for the proposition that municipalities cannot impose development fees upon public schools is misplaced.  In that case, we held that a city could not impose development fees upon residential developments for the purpose of public-school financing.  198 Ariz. at 500, 501, ¶¶ 19, 21.  *Apache Junction* is therefore irrelevant to the resolution of the issue in this case.

¶17　　　　In sum, we hold that the water main requirement at issue here is a legislative act that does not afford a city official or agency discretion to determine its nature or extent; therefore, CFL was not entitled to an exaction appeal under A.R.S. § 9-500.12(A)(1).  Given this holding, we need not address the other arguments raised by the parties.

## CONCLUSION

**¶18**         We affirm the superior court's order granting summary judgment and the related award of attorneys' fees and costs in favor of the City.  The City requests attorneys' fees incurred in connection with this appeal pursuant to A.R.S. § 9-500.12(H), which states that the superior court has the "authority to award reasonable attorney fees incurred in the [administrative exaction] appeal and trial pursuant to this section to the prevailing party."  Because nothing in that language authorizes this court to award attorneys' fees, we deny the City's request.

